[Civ. No. 26395.   Second Dist., Div. Two.   Mar. 20, 1963.]

RITA A. DODDS, Plaintiff and Appellant, v. RONALD JAMES BUCKNUM, Defendant and Appellant.

Fine & Pope and Thomas K. Armstrong for Plaintiff and Appellant.

Gilbert, Thompson & Kelly and Jean Wunderlich for Defendant and Appellant.

FOX, P. J.—Plaintiff, a guest in defendant's motor vehicle, brought this action to recover damages for personal injuries she sustained in an accident. She charges defendant with wilful misconduct. Defendant has appealed from an adverse judgment. Plaintiff has filed a cross-appeal on the theory that the trial court improperly disallowed certain medical expenses that she incurred on the ground that these expenses had been paid by defendant's insurance carrier.

### DEFENDANT'S APPEAL

Viewing the evidence in the light most favorable to the prevailing party and giving plaintiff the benefit of every reasonable inference that may be drawn therefrom, the facts leading up to this accident are substantially these:

On Wednesday evening, July 15, 1959, plaintiff and defendant were present at a "no host" cocktail party at the Grand Prix Restaurant on Beverly Boulevard in Los Angeles. The party was held as a prelude to an auto race scheduled for the following Saturday. Earlier on the above date, there had been a technical inspection of the racing cars that were to participate in the event. The cars that were to be in the competition were inspected as to their mechanical fitness. Defendant's 1956 Porsche was examined and found to be in good operating condition. Shortly before 1:45 a.m., plaintiff, defendant and several others left the restaurant and crossed Beverly Boulevard to defendant's car. Defendant entered his car on the driver's side. An argument ensued for quite some time between defendant and the people who had crossed the street with him. Plaintiff was tired and desired to rest so she sat down beside defendant in the Porsche. When defendant started up his car, plaintiff asked where they were going. He replied, "Around the block."

Defendant drove west on Beverly Boulevard and turned right on the first cross street, LaCienega Boulevard. This turn was "quite fast." Plaintiff became "a little nervous." She asked him "to slow up." He "just laughed." One block further, at the corner of LaCienega and Oakwood Avenue, defendant turned right again. He made this second turn

at such speed that his car skidded, the rear end crossing over the center of the street (Oakwood). This performance made plaintiff "a little panicky." She testified: "I told him he didn't have to prove he was a good driver to me, that I had watched him drive at the track for a long time, that he could slow up. . . ." He made no response. Defendant proceeded east on Oakwood toward LaJolla Avenue where there was a boulevard stop at 30-35 miles per hour. After passing the stop sign the car slowed down some but defendant did not make the boulevard stop. Plaintiff was unable to estimate the speed at which the car was traveling as it approached this third intersection, but it was "very fast." Defendant turned right on LaJolla which is a 40-foot street. As the car rounded the corner it started sliding again. Defendant shifted to low gear and applied full power. As they were traveling on La-Jolla, plaintiff observed their car was drifting or sliding away from the right-hand curb. Then the Porsche hit a car parked at the east (or left) curb of LaJolla. This was approximately 70 feet south of the south curb of Oakwood. At the time of the impact defendant's car was traveling 30 to 35 miles per hour and his engine speed was approximately 6000 r.p.m. Defendant never saw the car until he hit it. He, of course, could see that LaJolla was a narrow street, and he knew it was likely to have cars parked on it.[1]

On this evidence the trial court made the following findings:

"4. At said time and place defendant wilfully and intentionally operated said automobile at an excessive rate of speed and in violation of traffic controls with a wilful and wanton disregard for the possible injurious consequences to plaintiff as follows: Plaintiff and defendant entered said automobile at the Grand Prix Restaurant on Beverly Boulevard in the City of Los Angeles, drove west on Beverly Boulevard to the first intersection, turned north for one block to Oakwood Ave-

---

[1]There is testimony by defendant that his rear wheels crossed over some dry leaves immediately next to the curb as he turned the last corner. Defendant claims that this caused his car to spin and swing the rear end of his car around so that he could not avoid the accident. Officer Cobb, who was at the scene soon after the accident, observed some leaves at the corner. Defendant was an experienced racing car driver, having twice won the West Coast Championship for his class of car. The car he was driving was basically a racing car and not very practical for city driving. He seldom drove it on the streets. He was intimately familiar with the handling qualities of the car. Defendant knew that the way he was driving just before the accident, any foreign substance on the street would cause the car to "drift" or skid. He also knew that once the car started drifting, the way to correct the situation was to apply more power and turn the steering wheel.

nue and proceeded east on Oakwood Avenue at an excessive rate of speed toward the next north-south cross street which is LaJolla Avenue. There is a boulevard stop sign on the south-west corner of the intersection of Oakwood Avenue and LaJolla Avenue to control eastbound traffic on Oakwood Avenue. Defendant failed to stop at said stop sign and attempted to turn south on to LaJolla Avenue. Defendant was traveling at such a high rate of speed that in attempting to turn the corner from Oakwood Avenue on to LaJolla Avenue said automobile skidded across LaJolla Avenue and struck with great violence an automobile parked on the east side of LaJolla Avenue about 70 feet south of the south curb of Oakwood Avenue.

"5. The wilful, wanton misconduct of defendant above set forth proximately caused the injuries complained of by plaintiff, . . ."

██ "Wilful misconduct means intentional wrongful conduct, done either with knowledge that serious injury to the guest probably will result or with wanton and reckless disregard of the possible results." (*Goncalves* v. *Los Banos Mining Co.*, 58 Cal.2d 916, 918 [26 Cal.Rptr. 769, 376 P.2d 833].) ██ There are numerous cases holding that the failure to obey a boulevard stop sign alone does not constitute wilful misconduct. The same may be said of driving at an excessive speed. (See authorities cited in the recent opinion of this court in *Jones* v. *Ayers*, 212 Cal.App.2d 646, 650 [28 Cal.Rptr. 223].) But either of these wrongful acts when coupled with other circumstances may amount to wilful misconduct.

██ ██ Defendant turned the first and second corners on this "around-the-block" jaunt at such speed that it caused plaintiff concern and she asked him on both occasions to slow up. Neither of these requests seems to have made any impression on defendant. He just laughed at her first remonstration, and apparently proceeded into the second intersection at either higher speed or with less care with the result that the rear end of his car skidded or drifted across the center of the street. This time in asking defendant to slow up plaintiff appears to have briefly "lectured" him. This however does not appear to have slowed him up for he traveled east on Oakwood, the last block before attempting to negotiate the

last turn, at 30 to 35 miles per hour. He did not make the boulevard stop but it does seem that after he passed it, he slowed up some but it does not appear how much. In any event he entered the intersection "very fast" according to plaintiff's testimony. And the skidding or drifting of his car to the extent that he hit a parked car on the other side of the street tends to support her testimony and to indicate that defendant entered the intersection at too great a speed. This evidence and the reasonable inferences therefrom amply sustain the court's finding that defendant failed to stop at the boulevard stop sign and entered the intersection at a high rate of speed. Since defendant slowed down somewhat after passing the boulevard stop, it is a reasonable inference that he was aware of its presence. Although plaintiff admonished defendant twice to slow up he paid no attention to her warnings and made the successive turns in an increasingly hazardous manner. In analyzing the evidence at the close of the trial on the issue of liability, the trial judge commented that defendant "was deliberately driving the car in this fashion to show off. . . ." In this connection it should be recalled that defendant was entering a narrow street and that he could reasonably expect cars to be parked thereon. Hence he did not have the same open-space opportunity to straighten up his car after making the turn that he might have had on the race track. These circumstances all added to the possible injurious consequences that were likely to flow from the manner in which defendant operated his car and which he appears to have wilfully and wantonly disregarded. As the trial judge indicated, defendant knowingly and without necessity flirted with danger.

This factual picture amply sustains the trial court's finding that "defendant wilfully and intentionally operated said automobile at an excessive rate of speed and in violation of traffic controls with a wilful and wanton disregard for the possible injurious consequences to plaintiff . . ." and that such misconduct on the part of defendant proximately caused the injuries sustained by plaintiff in the said accident. Defendant's liability was therefore properly established. (See *Parsons* v. *Fuller*, 8 Cal.2d 463, 468-469 [66 P.2d 430]; *Rawlins* v. *Lory*, 44 Cal.App.2d 20, 24-25 [111 P.2d 973].)

### Plaintiff's Appeal

The trial court awarded plaintiff general damages and special damages for loss of earnings but did not include medical and hospital expenses in the amount of $955.05 because

this amount had already been paid to plaintiff by defendant's insurance carrier under the terms of the medical provisions of his automobile insurance policy. Plaintiff has appealed contending the court erred in refusing to include this item in the judgment. In our opinion the court ruled correctly.

It was stipulated that the medical and hospital bills were reasonable and were incurred in connection with the accident. The court found that they were necessary and the proximate result of the accident.

Section 3333, Civil Code, provides: "For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not." ■■■ The principle is thus stated in 15 Am. Jur., Damages, section 13, page 404: "Generally, no one can recover compensation twice in respect of the same injury, although this principle does not apply strictly to obligations not in the same right."

■■■ That a person cannot ordinarily recover twice for the same injury is very well demonstrated in such cases as covenants not to sue. There, the rule is firmly established that if an injured party takes a covenant not to sue from one joint tortfeasor, the remaining joint tortfeasor against whom a judgment is recovered is entitled to have the amount of money paid for the covenant not to sue to be taken into account and the judgment or verdict diminished accordingly. (*Laurenzi* v. *Vranizan*, 25 Cal.2d 806, 813 [155 P.2d 633]; *Reeder* v. *Hoag*, 158 Cal.App.2d 41, 43 [321 P.2d 793].)

■■■ Getting more specifically to our precise question, Oleck, Damages to Persons and Property, section 280, says: "Compensation already paid by the wrongdoer may be deducted." ■■■ The same principle is stated in section 923 of the Restatement of Torts. In comment "b" it is said ". . . where a person has tortiously harmed another as a result of which the other, in an effort to avoid further harm, incurs indebtedness, a tortfeasor who is thereupon liable to the injured person for the amount of such indebtedness (see § 919) can diminish his liability by paying the debt (see illustration 3)." Illustration 3 reads (p. 630): "A negligently injures B who is treated by C, a physician. A pays C's charges. B's damages against A are diminished." This makes good sense and the cases support it. (See: *Lundy* v. *Calmar S.S. Corp.*, 96 Fed.Supp. 19; *Walsh* v. *Boston etc. Co.*, 175 Fed.Supp. 411;

*Spielman* v. *New York etc. R.R. Co.,* 147 Fed.Supp. 451; *Burns* v. *Stouffer,* 344 Ill.App. 105 [100 N.E.2d 507]; *Purcell* v. *United States,* 130 Fed.Supp. 822.)

It thus appears that if defendant had gone to the doctor and hospital of plaintiff and had paid out of his own pocket the indebtedness that plaintiff had incurred on account of this accident, she could not have recovered them again from him. In other words, her recovery would be diminished by the amount personally paid by defendant. ▮ It can make no difference either in principle or in justice that defendant did not pay these bills out of his own pocket but that the source of such payments was insurance purchased by defendant with his own funds for such an eventuality. It would indeed be strange if a wrongdoer who has had foresight enough to cover himself with insurance, and thus in fact cause the payment of any doctor and hospital bills which his wrongful act may make necessary, should be penalized, whereas the person who does not similarly provide a fund for such contingencies should obtain the benefit if, perchance, at the time of the injury or thereafter he has the cash with which to pay and does in fact pay such expenses. It should therefore logically follow that if a wrongdoer provides a source or fund out of which the injured party's special damages are paid prior to trial the recovery of plaintiff is diminished to that extent.

▮ But where the payment is from a *collateral* source *with which the wrongdoer has nothing to do and to which he did not contribute at all* he will not get the windfall, and the recovery against him will not be diminished by the amount the injured party has received from the collateral source. (Oleck, Damages to Persons and Property, § 280.)

That this is the true distinction is apparent from a number of California cases, among which is the leading case of *Anheuser-Busch, Inc.* v. *Starley,* 28 Cal.2d 347 [170 P.2d 448, 166 A.L.R. 198]. In that case a trucking company engaged as a common carrier in the transportation by truck of personal property transported goods belonging to the plaintiff. In the course of this transportation the defendant's car collided with the carrier's truck, resulting in a partial destruction of the property. The carrier reimbursed the plaintiff, deeming itself liable to do so under the provisions of Civil Code section 2194. The plaintiff then sought to recover damages to its property from the defendant in the collision. The defendant was granted a directed verdict on the sole ground

that plaintiff had been fully repaid or compensated for its loss by the carrier but the Supreme Court reversed, stating the rule as follows (p. 349): ''Where a person suffers personal injury or property damage by reason of the wrongful act of another, an action against the wrongdoer for the damages suffered is not precluded nor is the amount of the damages reduced by the receipt by him of payment for his loss from *a source wholly independent of the wrongdoer.* [Citations.] The rule has been applied where the independent source is pension systems or charity. The most typical case is where the person suffering the damage has procured insurance protecting him against the loss, to which the wrongdoer did not contribute in procuring, and his insurer pays him for the loss suffered.'' (Italics added.)

This brings the correct rule into focus. ▮▮▮▮ The wrongdoer is not permitted to obtain a windfall by reason of the principle that an injured person should be compensated only once. As noted in the above quotation the most typical case is where the injured person carries and pays for insurance covering the loss involved. In that event the fact that the *injured party's insurance carrier pays* the damage does not excuse the wrongdoer who has not contributed to the procurement of this insurance from paying for the damage he has caused. And this is as it should be.

Relying on this principle, counsel for plaintiff states: ''In California it has long been the rule that it is no defense to an action for damages that plaintiff has been fully reimbursed by an insurer. [Citations.] Thus where the insurance payment emanates from *a source collateral to defendant* it is an error to deduct the amount paid from the judgment given against defendant in a personal injury action.'' (Italics added.) With commendable frankness counsel then states: ''None of the above cases deal with the problem posed where the defendant himself is the source of the insurance payment [as here] nor has counsel been able to discover any California case dealing squarely with the point.'' In support of her position plaintiff places her principal reliance in the Wisconsin case of *Severson* v. *Milwaukee Automobile Ins. Co.,* 265 Wis. 488 [61 N.W.2d 872]. It is not however applicable. That case, as the title indicates, was an action between the injured person and the insurance company. We do not have such an action here.

Each party will bear his or her own costs on appeal. The judgment is affirmed.

Ashburn, J., and Herndon, J., concurred.