## Lock v. Sterner
## Trenberth v. Sterner

*Martin Cohen* and *Gus Milides, Esqs.,* for plaintiffs.
*Robertson B. Taylor, Esq.,* for defendant.

WILLIAMS, J., October 23, 1972.—This matter is before the court as a case stated. The stipulated facts are that on August 24, 1969, defendant, Jeffrey Sterner, was involved in a one-car accident in which plaintiffs, Laura Christian Trenberth and Jonathan Lock, were his guest passengers. As a result of the accident, both plaintiffs were injured and actions in trespass were instituted against Sterner.

Defendant was insured under a policy with the Allstate Insurance Company which provided for automobile liability coverage in the amounts of $25,000 to $50,000 for bodily injury and medical payments up to $2,000 per person per accident. Trenberth claimed medical expenses in the amount of $1,527 and Lock claimed $888.33 in medical expenses. Both plaintiffs were paid the full amount of their medical expenses under the medical payment provision of defendant's insurance policy.

On January 12, 1972, the trespass actions were tried and resulted in verdicts in favor of plaintiff Lock in

the amount of $18,888.33 and plaintiff Trenberth in the amount of $9,027. Both verdicts included the amounts claimed in medical expenses by plaintiffs. Defendant's insurance carrier subsequently paid to plaintiffs the amount of the verdicts less, in each case, the medical expenses paid under the medical payment provision of the policy.

This present action is to recover the amount of medical expenses credited against the verdicts by defendant's insurance carrier. Since the matter comes before the court as a case stated, the facts have been agreed upon "to enable the court to pass upon the law and give judgment upon the whole."[1]

The sole legal issue which the court must decide is whether the insurance carrier for defendant is entitled to credit the medical payments made to plaintiffs under the medical payment provision of defendant's insurance policy against the jury verdicts which included compensation for medical expenses.

There are no appellate court decisions in Pennsylvania ruling on the question of crediting medical payments made under a medical payment provision against a verdict in a personal injury action. There is an abundance of authority in other jurisdictions, however, and there are two Pennsylvania district court cases concerning the matter. The decisions in other States are split over the question.[2]

The argument against allowing a credit to the verdict is based upon two theories. The first is that the collateral source doctrine does not permit a credit. This was the position taken in Truitt v. Gaines, 199 F. Supp. 143 (1961). There, with regard to the collateral source doctrine, it was stated that a tortfeasor cannot benefit by

---

[1] 6"Standard Pa. Pract. §36, page 40.

[2] An extensive review of the cases from all other jurisdictions dealing with this subject matter appears in 11 A.L.R. 3d 1115.

an independent payment from a collateral source and it was that court's opinion that payments pursuant to a medical payments provision were a collateral source. This position was also followed in Edmondon v. Keller, 401 S.W. 2d 718 (1966), and Johnson v. N. J. Manufacturers Indem. Ins. Co., 69 N.J. Superior Ct. 184, 174 A.2d 4 (1961).

The second theory, also espoused in Truitt v. Gaines, supra, rests upon the argument that, since separate premiums were paid for liability coverage and medical payments coverage and since each coverage was separate, the medical payments provision was a separate contract giving rise to two distinct obligations: one in tort and the other in contract.[3] It is this theory that plaintiffs advance here.[4] This breakdown of an insurance policy into its various coverages is merely a restatement of the collateral source rule.

The authorities permitting credit for medical payments hold that the collateral source doctrine is not applicable to the medical payments situation. The leading case employing this theory is Yarrington v. Thornburg, 205 A.2d 1, 11 A.L.R. 3d 1110 (Del. Sup. Ct. 1964). In this case, plaintiff argued that compensation paid under the medical payment provision was a collateral source and, as such, the tortfeasor had no right to use this compensation to mitigate his damages. In rejecting this argument, the court stated:

"The collateral source doctrine is predicated upon the theory that a tortfeasor has no interest in, and there-

---

[3] In Long v. Landy, 35 N.J. 44, 171 A.2d 1 (1961), the Supreme Court of New Jersey did not allow a credit; however, the decision was based upon the fact that there was no direct proof of the source of payments of the premiums for the medical payments coverage.

[4] See also Severson v. Milwaukee Automobile Insurance Co., 265 Wis. 488, 61 N.W. 2d 872 (1953).

fore no right to benefit from, monies received by the injured person from sources unconnected with the defendant. The doctrine, however, does permit the tortfeasor to obtain the advantage of payments made by himself or from a fund created by him; in such an instance the payments come, not from a collateral source, but from the defendant himself." [citing cases]

The court theorized that defendant had created the fund by purchasing the insurance and paying the premium.

All of the cases allowing a credit employ the rationale of Yarrington. In addition, many courts have stated that, where defendant had been prudent enough to take out insurance for which he alone has paid the premium, the insured is entitled to the benefit of his foresight: Moore v. Leggette, 264 N.Y.S. 2d 765, 24 A.D. 2d 891 (1965); Dodds v. Bucknum, 214 Cal. App. 2d 206, 29 Cal. Rptr. 393 (1963).

The two Pennsylvania district court cases[5] concerned with the matter have both allowed a credit following the rationale of Yarrington. In Krineski v. McKinney, 43 D. & C. 2d 295 (Erie, 1967), the facts were identical to the case at bar. The credit was allowed "because defendant's premiums, with others, created the fund from which these medical payments were

---

[5] A third case, Valimont v. Usnarski, 48 D. & C. 2d 365 (Mercer 1969), concerned a declaratory judgment action to determine the limits of an insurance policy within which a settlement could be effected. The policy provided a limit of $10,000 for liability for bodily injury and $2,000 for medical payments. The court held the policy limit was $12,000 not allowing a $2,000 credit for medical payments made. The court stated, by way of dicta, that it was "inclined to agree with the logic of the Yarrington case" and would have allowed a credit if there had been a verdict of $10,000 or less. The court distinguished that situation by stating the question before the court only involved the extent of liability under the insurance policy.

made [and] there is no reason or justice in allowing plaintiff to recover twice directly or indirectly from defendant."

Finley v. Lohr, 45 D. & C. 2d 62 (Delaware, 1968), through Lippincott, J., followed the same theory. In addition, the court stated:

" ' ". . . It would indeed be strange if a wrongdoer who has foresight enough to cover himself with insurance, and thus in fact cause the payment of any doctor and hospital bills which his wrongful act may make necessary, should be penalized, whereas the person who does not similarly provide a fund for such contingencies should obtain the benefit if, perchance, at the time of the injury or thereafter he has the cash with which to pay and does in fact pay such expenses. . ." ' "

We agree with the rationale of Krineski and Finley and the cases in other jurisdictions which allow a credit. The collateral source doctrine clearly does not apply to medical payment coverage. This is evident in the statement of the rule itself in Pennsylvania. " 'The collateral source rule may be described as the judicial refusal to credit to the benefit of the wrongdoer money or services received in reparation of the injury caused which *emanate from sources other than the wrongdoer*' ": Kagarise v. Shover, 218 Pa. Superior Ct. 287 (1971) [citing cases]. (Italics supplied.) Since the medical payments policy creates a fund by premiums paid by the wrongdoer, the rule does not apply.

It has been agreed in this case stated that the subject insurance policy makes no reference to credit for payment of medical expenses. Plaintiffs argue in their brief that "[i]f the insurer intended to receive credit for such payment the insurer certainly could have put such clause in his policy." We hold that, regardless of a "credit clause," double recovery should not be allowed

468

from the insured. As stated in Tart v. Register, 257 N.C. 161, 125 S.E. 2d 754 (1962), we construe the policy as intending "that injured parties have minimal protection (medical payments) where negligence is not involved, and full protection (to the limits of the policy) and no more, where negligence is involved."

It is our further opinion that the trial judge should allow the credit for medical payments after a verdict has been returned. "(The jury should not be instructed to enter such credits since this would be likely to introduce improperly the fact of insurance)": Finley v. Lohr, supra. See also 11 A.L.R. 3d 1115.

For the above reasons, we enter the following

## ORDER OF COURT

And now, October 23, 1972, judgment is entered for defendant.