Filed 6/18/13

CERTIFIED FOR PARTIAL PUBLICATION[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| JUSTIN BARNES, | |
| Plaintiff and Appellant, | C066002 |
| v. | (Super. Ct. No. 166638) |
| WESTERN HERITAGE INSURANCE COMPANY, | |
| Defendant and Respondent. | |

APPEAL from a summary judgment of the Superior Court of Shasta County, Monica Marlow, Judge. Reversed.

Michael Cogan for Plaintiff and Appellant.

Selman Breitman, Linda Wendell Hsu and Vanessa O'Brien Beary for Defendant and Respondent.

---

[*] Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of parts I, III and IV.

Plaintiff Justin Barnes,[1] then 11 years old, was injured in 2001 when a table fell on his back during a recreational program co-sponsored by the Shingletown Activities Council (the Activities Council).  Justin made a claim against the Activities Council.  But when Justin subsequently requested payment from the Activities Council's insurer more than one year after the accident for consultation with a medical specialist, the insurer, Western Heritage Insurance Company (Western Heritage), denied the request.  Western Heritage asserted that to qualify for medical payment coverage under the applicable policy, Justin had to report a claimed medical expense to Western Heritage within one year of the accident.

Justin settled a separate personal injury lawsuit against the Activities Council and other local entities regarding his medical expenses.  Western Heritage was not a party to that lawsuit.  Five years later, Justin initiated the instant action, suing Western Heritage for breach of contract and breach of the implied covenant of good faith and fair dealing based on the denial of his request for medical payment coverage.

The trial court granted summary judgment in favor of Western Heritage.  Among other things, the trial court ruled:  Justin's lawsuit against Western Heritage is barred by collateral estoppel because he settled his claims in the underlying personal injury action, including any claim for medical expenses; allowing Justin to recover under the medical payment provision of the policy would result in impermissible double recovery; Western Heritage is not equitably estopped to assert the policy's one-year deadline as a defense because Western Heritage had no duty to disclose the deadline to Justin and Justin did not rely to his detriment on any failure to disclose; and certain evidentiary objections asserted by Western Heritage have merit.

---

[1]  Because Justin and his mother Kelly share the same last name, we refer to them by their first names for clarity.

Justin now contends the trial court erred. He argues (1) collateral estoppel does not bar this action because the issues raised, litigated and necessarily determined in the personal injury action are different from those raised, litigated and to be determined in this action; (2) permitting him to recover under the medical payment provision will not result in double recovery because Western Heritage owed him a separate and direct duty under the medical payment provision; (3) Western Heritage is equitably estopped from asserting the one-year deadline in the policy because it did not inform him of the deadline; and (4) certain evidentiary objections asserted by Western Heritage should have been overruled.

We agree with Justin that the trial court erred in granting Western Heritage summary judgment. Specifically, we conclude:

(1) collateral estoppel does not bar the present action because the issues asserted in this action were not litigated or determined in the prior personal injury action;

(2) a recovery in this action would not amount to an impermissible double recovery because Justin now sues Western Heritage alleging that it breached its direct duty to Justin under the medical payment provision of the insurance policy, a duty distinct from the obligation Western Heritage owed the Activities Council under the liability provision of the policy;

(3) there is a triable issue of material fact regarding whether Western Heritage is equitably estopped to assert the policy's one-year deadline as a defense; and

(4) under the circumstances, we need not address Justin's challenges to the trial court's evidentiary rulings.

In reaching these conclusions, we do not express an opinion as to whether Justin can ultimately prevail on his claims against Western Heritage. We merely determine that the Western Heritage summary judgment motion should not have been granted on the current record. Accordingly, we will reverse the judgment.

BACKGROUND

Western Heritage issued a commercial general liability policy to the Activities Council covering the period from June 9, 2000 to June 9, 2001. The policy obligated Western Heritage to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies" (the liability provision). The policy defined " 'bodily injury' " as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." The policy also provided coverage of up to $5,000 per person for medical expenses, provided that, among other things, the medical expenses were incurred and reported to Western Heritage within one year of the date of the accident (the medical payment provision).[2] The obligation to pay for medical expenses under the medical payment provision was regardless of fault.

---

[2] The medical payment provision states, "1. Insuring Agreement [¶] a. We will pay medical expenses as described below for 'bodily injury' caused by an accident: [¶] (1) On premises you own or rent; [¶] (2) On ways next to premises you own or rent; or [¶] (3) Because of your operations; [¶] provided that: [¶] (1) The accident takes place in the 'coverage territory' and during the policy period; [¶] (2) The expenses are incurred and reported to us within one year of the date of the accident; and [¶] (3) The injured person submits to examination, at our expense, by physicians of our choice as often as we may reasonably require. [¶] b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for: [¶] (1) First aid administered at the time of an accident; [¶] (2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and (3) Necessary ambulance, hospital, professional nursing and funeral services."

Medical payment insurance "provides first party coverage on a no-fault basis for relatively low policy limits (generally ranging from $5,000 to $10,000) at relatively low premiums. [Citations.] The coverage is primarily designed to provide an additional source of funds for medical expenses for injured [claimants] without all the burdens of a fault-based payment system. [Citation.]" (*Nager v. Allstate Ins. Co.* (2000) 83 Cal.App.4th 284, 289-290.) " 'The purpose is to grant peace of mind and create a fund for the payment of medical services so that those injured will not necessarily be contemplating how to impose liability upon the insured. And, with this in mind, a broad

4

On May 12, 2001, when Justin was 11 years old, a table fell on his back while he was participating in an activity sponsored by Shasta Children and Families First Commission (Grass Roots) and the Activities Council at Black Butte Elementary School in Shingletown, California. Justin suffered a contusion and hematoma on his back. He received X-rays, a computed tomography (CT) scan, pain medications and physical therapy as a result of his injuries.

Justin made a claim against the Activities Council based on the accident. Western Heritage received notice of his claim on May 22, 2001. Western Heritage responded to the claim by informing Rich Rhodes, the superintendent of the Black Butte School District, in a letter dated May 30, 2001, that the policy provided $5,000 in medical payment coverage to Justin for his injury. Western Heritage did not disclose, and never informed Justin, that to qualify for medical payment coverage Justin had to incur and report a claimed medical expense to Western Heritage within one year of the date of the accident (by May 12, 2002). Western Heritage asked Rhodes to forward a copy of the May 30, 2001 letter regarding medical payment coverage to the Barnes family.

In August 2001, Western Heritage paid $1,478 to Justin's medical care providers pursuant to the medical payment provision of the policy for services Justin received from May 30, 2001, through July 30, 2001. There is no evidence that Justin submitted any additional bills to Western Heritage for payment.

Acting through Kelly Barnes, Justin's mother and guardian ad litem, Justin sued Shasta County, Grass Roots, the Activities Council and Black Butte Elementary School for negligence and premises liability on May 2, 2002 (the personal injury action). Western Heritage was not a party to that lawsuit. In the personal injury action, Justin sought to recover general damages and compensation for medical expenses. Pursuant to

---

and liberal interpretation will be given. . . .' [Citation.]" (*Harper v. Wausau Ins. Co.* (1997) 56 Cal.App.4th 1079, 1090.)

the liability provision of the policy, Western Heritage retained Tamara Wood as counsel to defend the Activities Council in the personal injury action.

In December 2002, more than a year after the accident, Justin requested coverage under the medical payment provision of the policy for a consultation with a specialist. The request was communicated to Wood, who asked Western Heritage whether medical payment coverage was available. In March 2003, Wood informed Justin's attorney, Michael Cogan, that Western Heritage would not pay for a second opinion. Cogan informed Wood that Justin needed a consultation with a specialist, not a second opinion. When Cogan did not hear further from Wood about Justin's request for additional medical payment benefits, Cogan sent Wood a letter dated May 2, 2003, stating that Justin needed to consult with a pediatric neurologic and orthopedic specialist because the doctor who attended Justin was not a specialist in child injuries. Cogan told Wood that Justin continued to "walk differently than he did before" the accident "and the long term effects of the injury [were] . . . quite concerning." Cogan asserted that Justin was a third party beneficiary of the medical payment provision of the policy, and Justin may have a bad faith claim against Western Heritage for its refusal to provide additional medical payment benefits. Western Heritage received a copy of Cogan's letter on or about May 2, 2003.

Wood consulted with James Campbell, a claims specialist for Western Heritage, about the reasons for declining coverage for a medical evaluation for Justin. Wood then informed Cogan in a letter dated May 29, 2003, that Western Heritage denied Justin's request for additional medical payment benefits because the policy required expenses to be incurred and reported to Western Heritage within one year of the date of the accident and there was no indication that further medical expenses were reasonable and necessary. As for a claim of bad faith against Western Heritage, Wood told Cogan that her law firm did not represent Western Heritage and did not get involved in coverage issues relating to

6

its clients. The May 29, 2003 letter from Wood to Cogan was the first notice that Justin received regarding the one-year deadline in the policy.

A June 5, 2003 e-mail from James Campbell to the director of claims at Western Heritage states that Campbell declined to authorize additional medical payment coverage for Justin because (1) medical payment coverage was "only good for 1 year after the date of [the] accident and . . . [Justin's] request came in March of 2003 almost 2 years after the accident"; (2) Western Heritage authorized and paid for an independent exam and that doctor found nothing wrong with Justin;[3] and (3) the best information Western Heritage had was that Justin had recovered, had not received treatment in over a year, and was on several sports teams. Western Heritage did not share this e-mail with Justin until after Justin filed his bad faith lawsuit against Western Heritage.

Cogan continued to assert Justin's need for further medical evaluation and his claim that Western Heritage's conduct in declining medical payment coverage constituted bad faith.

Justin and the Activities Council eventually settled the personal injury action. During settlement discussions, Justin was offered additional money if he included Western Heritage in a release of claims. Ultimately, however, the settlement was finalized between the parties named in the personal injury action and did not include Western Heritage.

---

[3] The reference to an independent exam refers to the review of Justin's medical records and discovery responses in the personal injury action by Howard Shortley, M.D. Dr. Shortley opined that Justin received appropriate treatment and needed no future treatment as a result of the accident. Dr. Shortley acknowledged, however, that he had "no knowledge of . . . [Justin's then] current physical condition, or further injuries." It appears that Dr. Shortley did not examine Justin.

On October 20, 2003, Kelly filed a verified petition seeking court approval of the settlement in the personal injury action.[4]  In the petition, Kelly declared under penalty of perjury that Justin "has not yet completely recovered from his injuries, at least psychologically."  But she said Justin, through his guardian ad litem, "made a careful and diligent inquiry and investigation to ascertain the facts relating to the accident in which [Justin] was injured, the responsibility for the accident, and the nature, extent, and seriousness of [Justin's] injuries."  She said "[Justin] fully understands that if the compromise proposed in this petition is approved by the court and is consummated, [Justin] will be forever barred from seeking any further recovery of compensation even though [Justin's] injuries might in the future appear to be more serious than they are now thought to be."  Kelly also averred that the compromise of Justin's claims was fair, reasonable and in Justin's best interest.

The settlement provided that Grass Roots, the Activities Council and Robert Gardner[5] would pay $2,500 to Cogan and $7,500 to Justin.  The petition acknowledged that Justin had received $1,478 from the Activities Council, Grass Roots and Gardner.

According to the petition, Justin incurred $15,782.03 in medical expenses, and $759.65 was still owed.  After the payment of costs and additional attorney's fees to Cogan and a $759.65 medical lien in favor of Medi-Cal, Justin would receive $3,163.03 from the settlement.

---

[4] A guardian ad litem appointed to represent a minor can, with the approval of the court in which the action is pending, compromise the minor's claims.  (Code Civ. Proc., § 372, subd. (a).)  To obtain court approval of the settlement of a minor's claims, the guardian ad litem must file a verified petition for approval of the settlement and must disclose "all information that has any bearing upon the reasonableness of the compromise."  (Cal. Rules of Court, rule 7.950; *Espericueta v. Shewry* (2008) 164 Cal.App.4th 615, 625.)

[5] Gardner, an employee of Grass Roots, was added as a named defendant in the personal injury action.

8

On April 16, 2004, the trial court issued an order approving the compromise of Justin's claims against the Activities Council, Grass Roots and Gardner. The petition to approve the compromise of claim and the order approving the compromise did not mention Western Heritage. Acting on behalf of the Activities Council, Western Heritage paid the settlement sum. Justin subsequently dismissed the personal injury action with prejudice.

Justin never saw a pediatric orthopedic specialist. But his expert, Paul Slosar, M.D., opined that Justin continued to suffer low back pain following his injury. Justin similarly declared that although he participated in sports, his injury impacted the way he walked and threw. He said the injury caused him pain in his lower back when he played sports. In addition, Dr. Slosar opined that if Justin continued to experience back pain in 2003 and walked differently as a result of the injury, a further orthopedic evaluation and an MRI (magnetic resonance imaging) were reasonable and necessary to evaluate Justin's condition. Kelly asserted that if she had known of the one-year time limit in the policy, she would have incurred additional medical expenses on behalf of her son before the one-year period expired because during that period her son experienced pain and she wanted a pediatric specialist to examine him.

Justin turned 18 on September 9, 2007. On July 2, 2009, he initiated the instant action against Western Heritage for breach of contract, breach of the implied covenant of good faith and fair dealing and unfair business practice.[6] Justin alleged that he is a third party beneficiary of the medical payment provision of the policy; Western Heritage breached the policy by failing to pay for all of his medical expenses; and as a result of the conduct by Western Heritage, he was unable to seek further medical services and was forced to settle his personal injury action for a lesser sum. Justin further alleged that

---

[6] Justin subsequently dismissed the unfair business practice cause of action without prejudice.

9

Western Heritage breached the covenant of good faith and fair dealing implied in the policy by intentionally denying him medical payment benefits without reasonable cause in order to force him to settle the personal injury action. Justin claims $1 million in damages for emotional distress and pain and suffering, $500,000 in incurred medical expenses, $250,000 in future medical expenses, $700,000 in lost earnings and lost future earning capacity, and $2 million in punitive damages.

The trial court granted Western Heritage's motion for summary judgment. The trial court concluded this action is barred by collateral estoppel because the settlement in the personal injury action resolved the issue of the payments due Justin for medical expenses under the policy, and Justin cannot seek to recover more than once for the same injury. The trial court also determined that Justin's request for additional coverage was barred by the one-year deadline in the policy, adding that Western Heritage was not equitably estopped to assert the deadline as a defense because it did not have a duty to disclose the deadline to Justin, but in any event Justin did not rely on the failure to disclose to his detriment because he settled the personal injury action.

STANDARD OF REVIEW

A defendant moving for summary judgment must show that one or more elements of a cause of action cannot be established, or that there is a complete defense to the cause of action. (Code Civ. Proc., § 437c, subds. (o), (p)(2).) If the defendant meets this initial burden, the burden shifts to the plaintiff to set forth specific facts showing that a triable issue of material fact exists as to that cause of action or defense. (*Id.* at subd. (p)(2).) The defendant's motion will be granted if the admissible evidence shows there is no triable issue as to any material fact and the defendant is entitled to judgment as a matter of law. (*Id.* at subds. (c), (d); *Hayman v. Block* (1986) 176 Cal.App.3d 629, 638.)

We review the decision to grant summary judgment de novo, liberally construing the evidence and resolving all doubts concerning the evidence in favor of the party opposing summary judgment. (*Superior Dispatch, Inc. v. Insurance Corp. of New York*

10

(2010) 181 Cal.App.4th 175, 186 (*Superior Dispatch, Inc.*).) The trial court's stated reasons for granting summary judgment are not binding on us because we review its ruling, not its rationale. (*Ibid.*)

DISCUSSION

I*

Justin claims the trial court erred in ruling that this action is barred by collateral estoppel. He argues the issues litigated and decided in the personal injury action are different than the issues asserted in this case. Western Heritage counters that collateral estoppel applies because both cases involve whether Justin was fully compensated for his medical expenses, including future medical expenses.

Collateral estoppel " ' "rests upon the sound policy of limiting litigation by preventing a party who has had one fair adversary hearing on an issue from again drawing it into controversy and subjecting the other party to further expense in its reexamination." ' " (*Alpha Mechanical, Heating & Air Conditioning, Inc. v. Travelers Casualty & Surety Co. of America* (2005) 133 Cal.App.4th 1319, 1327.) The party asserting collateral estoppel bears the burden of showing that (1) the issue sought to be precluded from relitigation is identical to that decided in a prior proceeding, (2) the issue was actually litigated in the prior proceeding, (3) the issue was necessarily decided in the prior proceeding, (4) the decision in the prior proceeding is final and on the merits, and (5) the party against whom preclusion is sought is the same as, or in privity with, a party to the prior proceeding. (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341; *American Continental Ins. Co. v. American Casualty Co.* (2001) 86 Cal.App.4th 929, 943.)

Regarding whether the issues in this case were litigated and necessarily decided in the personal injury action, *Schaefer/Karpf Productions v. CNA Ins. Companies* (1998) 64 Cal.App.4th 1306 (*Schaefer)* is instructive. Schaefer produced a television special for children and contracted with The Video Company (TVC) to duplicate the special onto videotapes, which were sold to Scholastic, Inc. (*Schaefer, supra*, at p. 1310.) TVC

11

duplicated the special onto videotapes it purchased from Matrix Video Duplication Corporation (Matrix). (*Ibid.*) But some of the videotapes already contained pornographic material that remained on the tapes after duplication. (*Ibid.*) Scholastic recalled the videotapes and refused to pay Schaefer. (*Schaefer, supra,* at p. 1311.)

Schaefer sued TVC and Matrix for breach of contract, negligence and breach of warranty (the underlying action). (*Schaefer, supra,* 64 Cal.App.4th at 1311.) TVC and Matrix were insured by CNA Insurance Companies (CNA) under commercial general liability policies, but CNA denied defense and indemnity in the underlying action. (*Ibid.*) Schaefer prevailed in his lawsuit and obtained an assignment of claims against CNA from Matrix. (*Ibid.*)

Schaefer then sued CNA to enforce the claims by Matrix against CNA for fraud and breach of contract. (*Schaefer, supra,* 64 Cal.App.4th at p. 1311.) CNA asserted there was no coverage under the policy for Schaefer's injury because his injury did not constitute physical injury within the meaning of the policy. (*Id.* at p. 1312.) Schaefer, in turn, urged that the coverage issue was decided against CNA in the underlying action because the trial court found in the prior lawsuit that Schaefer's loss " 'result[ed] from physical injury to or the loss of use of tangible property, the videotapes . . . .' " (*Id.* at pp. 1312-1313.)

The appellate court rejected Schaefer's contention because, after careful scrutiny of the complaint in the underlying action, the trial transcript, and the trial court's ruling and judgment, it found nothing in the record to show that the issue of coverage under the CNA policies was adjudicated in the underlying action. (*Schaefer, supra,* 64 Cal.App.4th at pp. 1313-1314.) Of significance to our inquiry, the appellate court stated: "Generally speaking, in an action by an injured party against the party who allegedly caused the injury the court does not adjudicate the issue of insurance coverage. The only questions litigated are the defendant's liability and the amount of damages. The plaintiff is not concerned with the theory of liability which produces victory; only with procuring the

12

largest possible judgment. Similarly, the defendant is concerned only with avoiding, or at least minimizing, a judgment for the plaintiff. [Citation] Whether the plaintiff's loss is covered by the defendant's insurance is not germane to the action, and evidence on that issue would be excluded as irrelevant. [Citation]" (*Id.* at p. 1313; see *Farmer ex rel. Hansen v. Allstate Ins. Co.* (C.D.Cal. 2004) 311 F.Supp.2d 884, 890 [following *Schaefer*].) The appellate court held that collateral estoppel did not apply in *Schaefer* because one of the prerequisites for collateral estoppel -- whether the issues presented in the lawsuit against CNA were necessarily decided and actually litigated in the underlying action -- was not established. (*Schaefer, supra,* 64 Cal.App.4th at p. 1313.)

Here, Western Heritage failed to demonstrate that the issues asserted in this action were raised, actually litigated and necessarily determined in the personal injury action. Indeed, the record indicates the issues in this case were not litigated in the prior case. In the personal injury action, Justin alleged negligence by Shasta County, Grass Roots, the Activities Council and Black Butte Elementary School in failing to instruct, warn and supervise Justin. Western Heritage was not named as a party in the personal injury action and no allegations were asserted against it. In this action, however, Justin alleges Western Heritage owed him direct obligations under the policy and breached those obligations in denying his request for coverage. (*Harper v. Wausau Ins. Co., supra,* 56 Cal.App.4th at pp. 1089-1090 [the insurer owes a direct obligation to the beneficiaries of a medical payment provision and this obligation is independent of its obligation to pay sums of money as damages under the liability provision of the insurance policy].) The issues in this case were not pleaded or litigated in the personal injury action. (7 Witkin, Cal. Procedure (5th ed. 2008) Judgment, § 419, pp. 1064-1065 [a prior judgment is not collateral estoppel on issues which were not raised in the prior action].) Although both actions involve a prayer for medical expenses, the specific issues asserted are different.

When Justin's attorney broached the subject of Western Heritage's bad faith during the personal injury action, the attorney for the Activities Council expressly

13

disclaimed authority to speak for Western Heritage or to speak on the issue of insurance coverage. Moreover, although a release of claims in favor of Western Heritage was solicited during settlement discussions in the personal injury action, the settlement ultimately did not include Western Heritage. The full and fair compensation that Kelly referenced in the petition to approve compromise of minor's claim pertained to the specific issues pleaded in the personal injury action, not to issues pertaining to Western Heritage that were neither pleaded, litigated or released.

Western Heritage cites *Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788, 797 (*Boeken*), but that case is inapposite because it involved the aspect of res judicata known as claim preclusion, which is distinct from collateral estoppel (issue preclusion). (*Murray v. Alaska Airlines, Inc.* (2010) 50 Cal.4th 860, 866-867.) Claim preclusion prohibits a second lawsuit between the same parties on the same cause of action. (*Boeken, supra,* 48 Cal.4th at p. 797.) Collateral estoppel bars a subsequent lawsuit on a different cause of action if the second lawsuit involves an issue actually litigated and determined in a prior proceeding. (*Ibid.*) In *Boeken,* the two lawsuits at issue were filed against the same defendant and involved the same primary right by the plaintiff, the right not to be wrongfully deprived of spousal companionship and affection. (*Id.* at pp. 791-792, 798-800, 804.)

Here, however, the summary judgment motion by Western Heritage was based on collateral estoppel, not claim preclusion. Western Heritage does not assert that the personal injury action and this action involve the same defendants. Western Heritage also does not argue that the two actions involve the same primary right or cause of action. Instead, it argued in the trial court, and it contends on appeal, that Justin seeks to relitigate an issue decided in the personal injury action. Accordingly, *Boeken* is not controlling.

The issues asserted in this action were not litigated or decided in the personal injury action, and collateral estoppel does not bar the present action.

14

Justin contends the trial court erred in concluding that an award in this action based on the medical payment provision would result in impermissible double recovery. Justin argues there would be no double recovery because Western Heritage owed him a separate and direct duty under the medical payment provision, a duty distinct from the duty owed to its insured, the Activities Council, under the liability provision of the policy.

The California Supreme Court and the appellate courts in this state have not addressed the precise issue presented: whether an injured plaintiff who receives some payment for medical expenses from a tortfeasor's insurer under the medical payment provision of an insurance policy, and who also settles a personal injury lawsuit against the tortfeasor and receives payment from the tortfeasor's insurer under the liability provision of the insurance policy, is thereafter precluded from separately suing the tortfeasor's insurer based on its alleged breach of direct duties owed to the plaintiff under the medical payment provision of the policy.

Out-of-state decisions are split on the issue. Many courts have held that the subsequent action is not barred. (E.g., *Beschnett v. Farmers Equitable Ins. Co.* (1966) 275 Minn. 328, 330 [146 N.W.2d 861, 863] [subsequent action is not barred where the insurer was not a party to the tort action and plaintiffs did not release claims against the insurer]; *Moorman v. Nationwide Mut. Ins. Co.* (1966) 207 Va. 244, 247-248 [148 S.E.2d 874, 876] [plaintiff is entitled to separate recovery under medical payment provision]; *Blocker v. Sterling* (1968) 251 Md. 55, 57-62 [246 A.2d 226, 228-231] [same]; *Severson v. Milwaukee Auto. Ins. Co.* (1953) 265 Wis. 488, 491-493 [61 N.W.2d 872, 874-875] [subsequent action is not barred because medical payment provision is a separate contract].) But some courts have precluded the second action. (E.g., *Almond v. Cigna Property & Casualty Ins. Co.* (1995) 322 Ark. 268, 270-271 [908 S.W.2d 93, 94-95] [claimant cannot recover more than once for the same injury]; *Tart v. Register* (1962) 257

N.C. 161, 172-174 [125 S.E.2d 754, 763-764] [it would be inequitable for plaintiff to recover twice against the insurer, and the insurer and the tortfeasor did not intend double recovery for medical expenses]; *Gunter v. Lord* (1962) 242 La. 943, 948, 954-956 [140 So.2d 11, 13, 15-16] [similar holding].)

We conclude the present action would not lead to an impermissible double recovery. An insurer's obligation to indemnify its insured under the liability provision of an insurance policy is separate and distinct from its obligation to pay for medical expenses under a medical payment provision of the same policy. (*Harper v. Wausau Ins. Co.*, *supra*, 56 Cal.App.4th at pp. 1088-1090 [involving medical payment coverage language identical to that in this case].) As one commentator noted, a medical payment provision is divisible from the remainder of the insurance policy and creates a direct liability on the part of the insurer to an injured person. (*Id.* at p. 1090 [citing 8A Appleman, Insurance Law and Practice (rev. ed. 1981) § 4902, pp. 228-230].) The obligation of the insurer under a medical payment provision is not dependent on the negligence of the insured or the insurer's obligation to pay damages under the liability provisions of the policy. (*Harper v. Wausau Ins. Co., supra,* 56 Cal.App.4th at p. 1090.)

The present action is based on the alleged breach of the obligations Western Heritage owed to Justin under the medical payment provision of the policy. Although Justin received some payment under the medical payment provision, he is now claiming that Western Heritage wrongfully denied him additional coverage. The record does not show that Justin obtained any recovery for Western Heritage's alleged *wrongful denial* of medical payment benefits.[7] Instead, the settlement Justin obtained in the personal injury

---

[7] We deny Justin's request to augment the appellate record to include the order granting Justin's motion to tax costs filed in the trial court on November 9, 2010. That order was submitted on a point raised for the first time in the reply brief. We decline to consider a point raised for the first time in a reply brief where Justin has not shown good cause for the failure to present the argument in his opening brief. (*Trustees of Capital Wholesale*

16

action was compensation for the alleged negligence by the defendants in that case, which included the Activities Council but did not include its insurer, Western Heritage. By satisfying the settlement in the personal injury action, Western Heritage performed its obligation to the Activities Council under the liability provision of the policy, an obligation that was separate and divisible from the duty under the medical payment provision.

Moreover, no language in the policy evinces the intent that payment under the liability provision extinguishes Western Heritage's obligation under the medical payment provision. For this reason, *Tart v. Register, supra,* 125 S.E.2d at pp. 763-764 and *Gunter v. Lord, supra,* 140 So.2d at pp. 13, 15-16 are distinguishable.

Although the parties focus on direct duty and double recovery, we are also aware of a 1970 decision by the appellate division of the Santa Clara Superior Court, which addressed this question by applying the collateral source rule. In *Jones v. California Casualty Indem. Exch.* (1970) 13 Cal.App.3d Supp. 1 (*Jones*), the court held that a plaintiff in a dog bite case who obtained a tort judgment against the dog's owners, including an award of medical expenses, and then obtained satisfaction of the judgment from the liability provision of the owners' insurance policy, could not subsequently sue the owners' insurer under the medical payment provision of that same policy. (*Jones, supra*, 13 Cal.App.3d Supp. at pp. 3-6.)

The court in *Jones* applied the collateral source rule, which provides that " 'if an injured party receives some compensation for his injuries from a source wholly independent of the tortfeasor, such payment should not be deducted from the damages which the plaintiff would otherwise collect from the tortfeasor.' " (*Howell v. Hamilton Meats & Provisions, Inc.* (2011) 52 Cal.4th 541, 551, quoting *Helfend v. Southern Cal.*

---

*Electric etc. Fund v. Shearson Lehman Brothers, Inc.* (1990) 221 Cal.App.3d 617, 627.) In any event, that order has no bearing on our discussion.

17

*Rapid Transit Dist.* (1970) 2 Cal.3d 1, 6.)  A typical example is where a plaintiff procures insurance coverage for a loss caused by a tortfeasor and the plaintiff's insurer pays the plaintiff for the loss.  (*Dodds v. Bucknum* (1963) 214 Cal.App.2d 206, 214.)  The plaintiff's insurance is wholly independent from, and collateral to, the tortfeasor, and the tortfeasor is not permitted to benefit from the plaintiff's prudence.  (*Helfend v. Southern Cal. Rapid Transit Dist., supra,* 2 Cal.3d at pp. 6, 10.)  But where the tortfeasor maintains his own insurance coverage to cover the plaintiff's loss, such insurance is not wholly independent from, and collateral to, the tortfeasor, and those insurance payments are deducted from the plaintiff's recovery.  (*Dodds v. Bucknum, supra*, 214 Cal.App.2d at p. 213.)

Based on this distinction between insurance coverage maintained by a plaintiff as coverage for the plaintiff's loss (a source collateral to the alleged wrongdoer) and insurance coverage maintained by the alleged wrongdoer as coverage for the alleged wrongdoer's liability (a source not collateral to the wrongdoer), the court in *Jones* concluded that the plaintiff could not separately recover against the insurer under the medical payment provision of the insurance policy because the policy was not "wholly independent" of the owners who maintained the policy, and hence was not collateral to them.  (*Jones, supra*, 13 Cal.App.3d Supp. at pp. 3-6.)

We disagree with the analysis in *Jones*.  The plaintiff in *Jones* first brought a personal injury action against the dog owners, alleging that the dog owners were the wrongdoers.  (*Jones, supra,* 13 Cal.App.3d Supp. at p. 3.)  To the extent the owners maintained liability insurance to cover the tort judgment against them, that funding source was not collateral to the alleged wrongdoers.  But plaintiff then brought a separate lawsuit against the insurer alleging that the *insurer* was the wrongdoer.  The policy at issue was not maintained by the *insurer* to provide coverage for its wrongdoing, and hence the insurance policy was collateral to the alleged wrongdoer in that case.

Here, Justin first brought a personal injury action against the Activities Council, alleging that the Activities Council was the wrongdoer. The Activities Council maintained liability insurance for that purpose, and that funding source was not collateral to the Activities Council, the alleged wrongdoer. But plaintiff now brings a separate lawsuit against the insurer, Western Heritage, alleging that Western Heritage is the wrongdoer. The policy at issue was not maintained by Western Heritage to provide coverage for *its* wrongdoing, and hence the insurance policy is collateral to the alleged wrongdoer. The collateral source rule does not bar Justin's present action.

III*

Justin next contends the trial court erred in concluding that Western Heritage is not equitably estopped from asserting the one-year deadline in the insurance policy.

The applicable insurance policy provides medical payment coverage if the expenses are incurred and reported to Western Heritage within one year of the date of the accident. There is no dispute in this case that the provision is valid. (*Spray, Gould & Bowers v. Associated Internat. Ins. Co*. (1999) 71 Cal.App.4th 1260, 1267 (*Spray, Gould & Bowers*) [limitation provisions in insurance policies are generally valid].) Justin requested medical payment coverage for a consultation with a pediatric specialist more than one year after the accident. Under the policy language, even if additional medical expenses had been incurred,[8] Justin's request for coverage was properly denied unless, as Justin contends, Western Heritage was equitably estopped from relying on the one-year time limit.

---

[8] Western Heritage points out that Justin was required to actually incur a claimed medical expense as a condition precedent to coverage under the medical payment provision, and Western Heritage was entitled to deny medical payment benefits because Justin did not satisfy this condition to payment. As we explain, however, there is a triable issue of material fact regarding whether Justin would have incurred additional expenses if Western Heritage had informed him of the deadline.

19

Equitable estoppel is a remedial judicial doctrine applied to ensure fairness and to do equity. (*Spray, Gould & Bowers, supra,* 71 Cal.App.4th at p. 1270.) An insurer may be equitably estopped from asserting a contractual time limit as a defense if it had a duty to inform the insured of the time limit, its failure to do so caused the insured to refrain from filing a timely claim, and the insured's reliance on the insurer's conduct was reasonable. (*Superior Dispatch, Inc.*, *supra*, 181 Cal.App.4th at p. 186; *Spray, Gould & Bowers, supra,* 71 Cal.App.4th at pp. 1267-1268.)

Justin argues Western Heritage was required to give him notice of the contractual time limit applicable to his claim pursuant to sections 2695.4, subdivision (a), and 2695.7, subdivision (f), of title 10 of the California Code of Regulations (hereafter "section 2695.4(a)" and "section 2695.7(f)"). Sections 2695.4(a) and 2695.7(f) are part of the Fair Claims Settlement Practices Regulations (Cal. Code Regs., tit. 10, §§ 2695.1-2695.17) (Regulations) which were promulgated by the Insurance Commissioner to define minimum standards for the settlement of claims. (Ins. Code, §§ 790, 790.10; Cal. Code Regs., tit. 10, § 2695.1, subd. (a).) In 2001, section 2695.7(f) provided, in pertinent part, "[e]xcept where a claim has been settled by payment, every insurer shall provide written notice of any statute of limitation or other time period requirement upon which the insurer may rely to deny a timely claim. Such notice shall be given to the claimant not less than sixty (60) days prior to the expiration date; except, if notice of claim is first received by the insurer within that sixty days, then notice of the expiration date must be given to the claimant immediately."[9] (Cal. Code Regs., tit. 10, § 2695.7(f), Register 97,

[9] Section 2695.7(f) currently provides, "Except where a claim has been settled by payment, every insurer shall provide written notice of any statute of limitation or other time period requirement upon which the insurer may rely to deny a claim. Such notice shall be given to the claimant not less than sixty (60) days prior to the expiration date; except, if notice of claim is first received by the insurer within that sixty days, then notice of the expiration date must be given to the claimant immediately. . . . This subsection shall not apply to a claimant represented by counsel on the claim matter."

Nos. 1-2 (Jan. 10, 1997), p. 752.2(b).) Section 2695.7(f) did not apply to a claimant represented by counsel on the claim matter. (*Id.* at p. 752.2(c).)

Western Heritage did not violate section 2695.7(f) with regard to any claim relating to services Justin received during the period May 2001 to July 2001 because such claims were settled by payment. (Cal. Code Regs., tit. 10, § 2695.7(f), Register 97, Nos. 1-2 (Jan. 10, 1997), p. 752.2(b).) As to any claim for additional medical payment coverage permitting Justin to consult with a pediatric specialist, section 2695.7(f) did not apply because Justin was represented by counsel when he requested this additional coverage. (*Id.* at p. 752.2(c).) Justin has not established that Western Heritage is estopped from asserting the one-year deadline based on section 2695.7(f).

The other asserted regulation, section 2695.4(a), requires that an insurer disclose all applicable time limits in the insurance policy to a claimant seeking medical payment coverage.[10] (Cal. Code Regs., tit. 10, § 2695.4(a), Register 97, Nos. 1-2 (Jan. 10, 1997), p. 752.2(a); *Spray, Gould & Bowers, supra*, 71 Cal.App.4th at p. 1269 [section 2695.4(a) imposes on insurers an unmistakable duty to advise claimants of applicable claim time limits]; *Royal Indemnity Co. v. United Enterprises, Inc*. (2008) 162 Cal.App.4th 194, 206, fn. 5 [medical payment claims are first party claims]; *Nager v. Allstate Ins. Co., supra,* 83 Cal.App.4th at p. 289 [medical payment provisions provide first party coverage].) Unlike section 2695.7(f), there is no exception to the disclosure duty imposed by section 2695.4(a) for claimants represented by counsel. (Cal. Code Regs., tit. 10, § 2695.4(a),

---

[10] Section 2695.4(a) states, "Every insurer shall disclose to a first party claimant or beneficiary, all benefits, coverage, time limits or other provisions of any insurance policy issued by that insurer that may apply to the claim presented by the claimant. When additional benefits might reasonably be payable under an insured's policy upon receipt of additional proofs of claim, the insurer shall immediately communicate this fact to the insured and cooperate with and assist the insured in determining the extent of the insurer's additional liability." (Cal. Code Regs., tit. 10, § 2695.4(a), Register 97, Nos. 1-2 (Jan. 10, 1997), p. 752.2(a).)

21

Register 97, Nos. 1-2 (Jan. 10, 1997), p. 752.2(a); *Superior Dispatch, Inc., supra*, 181 Cal.App.4th at p. 190.)

Relying on *SEMX Corp. v. Federal Ins. Co.* (S.D.Cal. 2005) 398 F.Supp.2d 1103 (*SEMX Corp.*), Western Heritage maintains that sections 2695.4(a) and 2695.7(f) did not require it to provide notice of the contractual time limit for medical payment claims because it had accepted coverage under the medical payment provision and Justin settled his claims for medical expenses in the personal injury action. But the facts in this case are distinguishable from those in *SEMX Corp.*

In *SEMX Corp.*, an insured settled a claim for lost income with its insurer; the insurer paid less than the full amount of the loss as determined by the insurer's retained accountant. (*SEMX Corp., supra,* 398 F.Supp.2d at pp. 1106-1107, 1109, fn. 2.) In a bad faith lawsuit that followed, the district court held that section 2695.7(f), not section 2695.4(a), controlled the case because the parties settled the lost income claim by payment. (*Id.* at p. 1112.) The court determined that under section 2695.7(f) the insurer was not required to provide notice of the contractual limitations provision because it had settled the claim its insured made under the policy. (*Ibid.*)

Unlike the lost income claim in *SEMX Corp.,* Justin's underlying claim against Western Heritage for additional medical payment coverage -- the claim upon which the present breach action is based -- was not settled or paid. Western Heritage denied Justin's request for additional coverage. As we have explained, the settlement in the personal injury action was not a settlement of any claim made against Western Heritage. Hence, reliance upon *SEMX Corp.* is misplaced.

Western Heritage was required to provide Justin with actual notice of the one-year time limit for making additional claims. (Cal. Code Regs., tit. 10, § 2695.4(a), Register 97, Nos. 1-2 (Jan. 10, 1997), p. 752.2(a); *Sarchett v. Blue Shield of California* (1987) 43 Cal.3d 1, 14-15; *Spray, Gould & Bowers, supra,* 71 Cal.App.4th at pp. 1272-1273.) It is undisputed that Western Heritage did not inform Justin of the one-year deadline.

22

Although Western Heritage was required to inform Justin of the one-year deadline, Justin must also establish the other elements of equitable estoppel: that Western Heritage's omission caused Justin to refrain from filing a timely claim, and that Justin's reliance was reasonable. (*Superior Dispatch, Inc.*, *supra*, 181 Cal.App.4th at p. 186; *Spray, Gould & Bowers, supra,* 71 Cal.App.4th at pp. 1267-1268.) Western Heritage argues Justin cannot establish these essential elements.

We conclude, however, that there are triable issues of material fact as to these elements. An insurer's failure to disclose is a cause of a claimant's injury if the claimant would have taken action to avoid injury had the claimant known the omitted fact. (*Superior Dispatch, Inc.*, *supra*, 181 Cal.App.4th at p. 187.) The insurer need not intend to deceive the insured to be subject to equitable estoppel. (*Id.* at p. 186.) Rather, estoppel may be predicated on the insurer's failure to speak when it is bound to do so. (*City of Hollister v. Monterey Ins. Co.* (2008) 165 Cal.App.4th 455, 488.)

Justin presented evidence that he, through his guardian ad litem, had no actual knowledge of the one-year deadline in the policy. And Kelly declared that had she known of the one-year time limit she would have incurred additional medical expenses before the one-year period expired because Justin continued to experience pain in his back. This evidence is sufficient to create triable issues of fact.

## IV*

Justin also assigns error to the trial court's order sustaining evidentiary objections to paragraphs 2(a), 2(c) and 2(d) of the declaration of Frank T. Glynn. It is unnecessary

23

to discuss these assignments of error, however, because we conclude reversal is required irrespective of the statements in the challenged declaration.

DISPOSITION

The judgment is reversed.  Justin shall recover his costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(2).)


                                            MAURO                  , J.


We concur:


_____RAYE_____, P. J.


_____NICHOLSON_____, J.