[No. E032039. Fourth Dist., Div. Two. Jan. 10, 2003.]

ROTOLO CHEVROLET, Petitioner, v.
THE SUPERIOR COURT OF SAN BERNARDINO COUNTY,
Respondent;
NORBERT STAUDT, Real Party in Interest.

## COUNSEL

Hollins, Schechter & Condas, Bruce Lee Schechter, and Thomas M. Condas for Petitioner.

No appearance for Respondent.

Welebir & McCune and James F. Tierney III for Real Party in Interest.

## OPINION

**HOLLENHORST, Acting P. J.**—In this matter we are called upon to analyze and apply the collateral source rule. We hold that the trial court erred in finding that the payments at issue constituted a collateral source and that evidence of the payments would therefore be inadmissible at trial. Accordingly, we grant the relief requested.

The relevant facts are not in dispute and may be briefly stated. Real party in interest Norbert Staudt (Staudt), plaintiff below, alleges that he suffered injury due to a defective vehicle supplied by defendant and petitioner Rotolo Chevrolet (Rotolo) to Staudt's employer. He further claims that he was compelled to retire from his position as a fire captain due to his injuries. Just prior to trial, Staudt filed a motion in limine to exclude any evidence of payments he had and would receive as *disability* retirement benefits. On the other hand, Staudt intends to introduce evidence of the amount of *regular* retirement benefits that he has lost due to his premature retirement. Although the record is not complete in this respect, it appears that Staudt's expert has testified that, over the period of his retirement, he would have received $873,261 in retirement benefits, and that Staudt intends to claim this amount as damages.

Rotolo opposed the motion, pointing out that the expert had also testified that Staudt could expect to receive $841,716 in *disability* retirement benefits,

and would therefore actually suffer a net loss of only $31,545.[1] The trial court, however, agreed with Staudt that the collateral source rule applied to exclude evidence of the disability retirement benefits. This writ petition by Rotolo followed, and we stayed the trial pending our resolution of the dispute.

## DISCUSSION

Although it has historically been accompanied by rumblings of discontent (see *Helfend v. Southern Cal. Rapid Transit Dist.* (1970) 2 Cal.3d 1, 6-7, especially fns. 4 and 6 [84 Cal.Rptr. 173, 465 P.2d 61, 77 A.L.R.3d 398] (*Helfend*)), the collateral source rule is well established in this state, and in fact California has long been described as a "firm proponent of the 'collateral source rule.'" (*Hrnjak v. Graymar, Inc.* (1971) 4 Cal.3d 725, 729 [94 Cal.Rptr. 623, 484 P.2d 599, 47 A.L.R.3d 224].) ▇▇ The rule "operates both as a substantive rule of damages and as a rule of evidence." (*Arambula v. Wells* (1999) 72 Cal.App.4th 1006, 1015 [85 Cal.Rptr.2d 584].) Simply stated, the rule is that "if an injured party receives some compensation for his injuries from a source wholly independent of the tortfeasor, such payment should not be deducted from the damages which the plaintiff would otherwise collect from the tortfeasor." (*Helfend*, at p. 6.) In perhaps its purest form, the rule "embodies the venerable concept that a person who has invested years of insurance premiums to assure his medical care should receive the benefits of his thrift. The tortfeasor should not garner the benefits of his victim's providence." (*Helfend*, at pp. 9-10, fn. omitted.) Thus, in *Helfend,* the plaintiff claimed medical expenses, and the court held that the collateral source rule barred defendant from introducing evidence that the expenses had in fact been covered by plaintiff's insurer. However, the doctrine also covers payments such as pensions paid to a plaintiff who, as a result of his injuries, can no longer work. ▇▇▇▇ Like insurance benefits, such payments are considered to have been secured by the plaintiff's efforts as part of his employment contract, and the tortfeasor is entitled to no credit for them. (See *McQuillan v. Southern Pacific Co.* (1974) 40 Cal.App.3d 802 [115 Cal.Rptr. 418].)[2]

On the surface, therefore, Staudt's argument has some appeal. ▇ However, Rotolo does not argue that the disability pension benefits

---

[1]At the hearing in the trial court, plaintiff's attorney advised the court that the dispute over the admissibility of the disability payments—and over the effect of such payments as a potential offset—was the primary issue preventing settlement of the case. Although we do not commonly grant writ review of pretrial evidentiary rulings (see *Aas v. Superior Court* (2000) 24 Cal.4th 627, 634 [101 Cal.Rptr.2d 718, 12 P.3d 1125]), we have done so in this case because it appears that a speedy resolution of the issue may obviate the need for trial.

[2]As the court notes in *Helfend*, insurance policies commonly include provisions either requiring the insured to repay the insurer from any litigation recovery, or subrogating the insurer to the rights of the insured. (*Helfend, supra,* 2 Cal.3d at pp. 10-11.) In this situation,

received are admissible against Staudt's claim for lost earnings due to his early retirement. With respect to his lost earnings, the pension benefits clearly are a collateral source and cannot reduce Staudt's damages. If Staudt provides evidence that he would have worked for five more years at an average salary of $60,000 per year, he will be entitled to damages in the total sum of $300,000 despite the fact that he is receiving pension benefits. Here, there is no dispute.

As noted above (see fn. 2, *ante*), the fact that a plaintiff may obtain a double recovery due to the application of the collateral source rule has not been deemed significant. The problem here is that if Rotolo is unable to introduce evidence of the disability payments, Staudt will wind up with triple compensation. He will obtain damages based on lost income, additional damages based on his lost "regular" retirement benefits, and his actual disability retirement benefits.

The rule does not require this inequitable result,[3] and we find it inapplicable here. The trial court's error lay in accepting the proposition that Staudt's retirement benefits could be separated into two categories, and that he was accordingly entitled to claim "injury" to his "regular" benefits as to which his disability benefits were a "collateral source."[4] In our view, the basic consequence of Rotolo's alleged tortious conduct was that Staudt could

---

there is no double recovery for the plaintiff/insured. (See also *Hanif v. Housing Authority* (1988) 200 Cal.App.3d 635, 639-640 [246 Cal.Rptr. 192] [court notes that the plaintiff could recover for medical expenses actually paid by Medi-Cal, but also that Medi-Cal had statutory lien and subrogation rights].)

However, it has not been held essential that the plaintiff have a legal obligation to repay benefits received for the collateral source rule to apply. This is true both for gratuitously provided medical expenses or support payments, and the social purpose behind the rule in this respect is based on the desire to encourage charitable action. (*Arambula v. Wells, supra*, 72 Cal.App.4th at p. 1012.) With respect to pension benefits, the justification for the rule is that the plaintiff secured the benefits by his labors, and the fact that he may obtain a double recovery is not relevant. (See *Helfend, supra*, 2 Cal.3d at pp. 10-11.)

[3]It is true that the court in *Helfend* retreated from its earlier concerns that the collateral source rule had "punitive" effects. (*Helfend, supra*, 2 Cal.3d at p. 8, fn. 8 [discussing *City of Salinas v. Souza & McCue Construction Co.* (1967) 66 Cal.2d 217, 228 [57 Cal.Rptr. 337, 424 P.2d 921]].) However, this does not mean that courts should accept unfair applications of the rule with complacency. Furthermore, the court expressly noted that it was not determining whether, or how, the rule should be applied in the "myriad of possible situations which we have not discussed." (*Helfend*, at p. 6, fn. 3.) As did the court in *Arambula v. Wells*, "[w]e take *Helfend* at its word" (*Arambula v. Wells, supra*, 72 Cal.App.4th at p. 1010) and consider ourselves free to consider the application of the rule here, guided by the principles we have stated.

[4]Rotolo appears to concede that Staudt would be entitled to the difference between the regular benefits he expected to receive, and the disability benefits he will actually receive, and that to that extent, he did suffer an injury not only to his earnings, but to his retirement benefits. We do not consider the issue.

no longer work and had to retire. He therefore received retirement benefits which constitute a collateral source of compensation, and Rotolo may not offset these benefits against Staudt's lost earnings damages. But a pension is a pension is a pension, and Staudt is not entitled to characterize the disability pension payments he receives from his employer as a collateral source replacing regular pension payments that he would have received from his employer. Although the employer is the source "wholly independent of the tortfeasor" (*Helfend, supra,* 2 Cal.3d at p. 6), the fact that the employer provides two potential types of pension benefits does not make one type "collateral" to the other, which is already "collateral" to Staudt's lost earnings.

As has been noted, the collateral source rule can result in a double recovery for Staudt, but this consequence is acceptable in furtherance of the policy of encouraging persons to obtain financial protection against misadventures. However, there is no reason to award yet another level of recovery for Staudt who happens to have the option of taking a disability retirement rather than a regular retirement. The logic behind the rule does not extend so far. Staudt could not receive both a disability pension and a regular pension, and there is no justification for allowing him to claim that he has been "damaged" by the loss of his regular pension when he is actually receiving the disability payments.[5]

We concede that no controlling, or even persuasive authority supports our conclusion, but on the other hand none contradicts it. The case on which Staudt primarily relies is inapplicable. In *McKinney v. California Portland Cement Co.* (2002) 96 Cal.App.4th 1214 [117 Cal.Rptr.2d 849] (*McKinney*), decedent retired and began drawing both pension and Social Security benefits. After his death, his widow (plaintiff in the wrongful death action) began receiving benefits from both sources, but claimed as damages the loss of the benefits which had been payable to her husband. In holding that the evidence was properly excludable under the collateral source rule, the court reasoned first that the Social Security payments (which it noted were described by the Social Security Administration as "survivors *insurance*") were a "new benefit" which the widow had obtained by applying in her own name, and thus insofar as it replaced the lost benefits was a "classic collateral source." (*Id.* at p. 1226, italics added.) With respect to the job pension, it conceded that the issue was "not quite as clear," but found that the defendant had failed to carry the burden of showing that the pension had been jointly payable to the spouse during the decedent's lifetime and had merely continued unchanged after his death. It also noted that the decedent had elected a reduced lifetime benefit in return for spousal survivor benefits,

---

[5]Except insofar as the disability benefits are less than he would otherwise have obtained.

and construed this election as a "constructive payment . . . much like an insurance policy."[6]

Thus, in *McKinney*, the collateral source rule was applied to Social Security benefits which replaced benefits that had stopped, and to pension payments which had been constructively paid for, thus triggering the classic rationale for the rule. Here, however, Staudt's disability pension payments do not replace anything; they are alternative payments to a regular pension. Nor is there any indication that Staudt took any action or expended any funds in order to ensure the availability of a disability retirement. Realistically, a worker does not attempt to secure disability benefits in order to replace lost regular pension income. The worker's basic concern is to replace employment income when the time comes that the worker either cannot, or does not choose to, continue working.

We therefore find *McKinney* far from controlling. On the other hand, a case proffered by Rotolo is not much more helpful. In *Morgan Guar. Trust Co. of N.Y. v. Garrett Corp.* (S.D.N.Y. 1986) 625 F.Supp. 752, the court held that "the collateral source doctrine does not bar evidence offered to show that the identical payment claimed as lost was in fact paid. . . . [E]vidence of the *pension plan payment* was admissible to rebut a claim of lost support from allegedly lost *pension benefits*." (*Id.* at p. 756, italics added.) However, the opinion does not make clear the relationship between the benefit paid and the benefit claimed as lost. It is possible that the opinion merely states the obvious: that if a plaintiff claims that a pension (perhaps a jointly payable pension) is not being paid due to the death of a decedent, the defendant may introduce evidence that this is not true and the pension is still being paid.[7] It is not clear that *Morgan Guar. Trust Co. of N.Y. v. Garrett Corp.* has anything to say about the situation before us, and we cannot rely upon it.

Instead, we rely primarily on equity and common sense. ▮▬▬ Even if Staudt may recover for the reduction in his pension benefits, he

---

[6]*McKinney, supra,* 96 Cal.App.4th at pages 1226-1227. In *McKinney*, the decedent had retired for reasons unrelated to the asbestos exposure on which the lawsuit was eventually based. There was no claim for lost wages and thus no triple recovery despite the application of the collateral source rule to allow the widow, in effect, to recover for decedent's lost pension and Social Security while receiving essentially the same payments in her own right.

[7]The *McKinney* court strongly suggested that if the wife had been receiving a continuation of a joint pension, the collateral source rule would not prevent the defendant from showing this to defeat her claim of "loss."

cannot use the collateral source rule to prevent Rotolo from introducing evidence that he is, in fact, receiving a pension.[8]

## DISPOSITION

The trial court erred in granting the motion in limine. Let a peremptory writ of mandate issue as prayed. Petitioner to recover its costs.

Ward, J., and Gaut, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied April 9, 2003.

---

[8]The collateral source rule has never been held to completely bar the introduction of evidence regarding other benefits. Such evidence is admissible, for example, to show that a plaintiff who claims disabling injuries has a motive for malingering, or a disincentive to return to work. (See *Arambula v. Wells, supra,* 72 Cal.App.4th at pp. 1015, 1016, and cases cited.) It is thus apparent that the rule bends to the needs of equity and fairness.